VERMONT YOGURT COMPANY, a foreign corporation, Plaintiff-Appellant,

v.

BLANKE BAER FRUIT & FLAVOR COMPANY, a foreign corporation, Defendant-Respondent.

Court of Appeals

*No. 81–732. Submitted on briefs September 21, 1981.—Decided May 5, 1982.*
(Also reported in 321 N.W.2d 315.)

For the plaintiff-appellant the cause was submitted on the briefs of *Brian E. Butler* and *Joan M. Knoebel* and *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

For the defendant-respondent the cause was submitted on the brief of *Burton A. Strnad* and *Strnad & Gossens* of Milwaukee.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J.   Both the plaintiff and the defendant are nonresident corporations. The defendant does a small amount of business in this state. The plaintiff's cause of action did not arise in Wisconsin, and did not arise out of any contact the defendant had with this state. The broad issue is whether the courts of this state have personal jurisdiction over the defendant under the "doing business" subsection of Wisconsin's long-arm statute, sec. 801.05(1)(d), Stats. The precise issue is whether the trial court correctly held that more substantial contacts by the defendant with this state were required to confer

jurisdiction under the statute with respect to a nonresident plaintiff bringing a foreign cause of action than with respect to a resident plaintiff or a local cause of action. We agree with the trial court's conclusion and affirm.

The facts are not in dispute. The plaintiff-appellant is a Vermont corporation doing business on the East Coast. It does no business in Wisconsin. The defendant-respondent is a foreign corporation which manufactures food flavorings in Missouri and New Jersey. The plaintiff purchased food flavorings and ingredients from the defendant which were shipped to the plaintiff in Vermont from Missouri. None of the defendant's products was used by the plaintiff to manufacture any product sold or distributed in Wisconsin. No part of the transactions between the plaintiff and defendant took place in Wisconsin.

The plaintiff commenced this suit for breach of warranty and misrepresentation. The complaint alleges that the defendant represented or warranted that its products contained no artificial components. The plaintiff seeks damages arising when a major retailer/distributor refused to sell or distribute plaintiff's products after it discovered the presence of artificial ingredients. The record does not disclose why the action was brought in Wisconsin.[1]

Neither party disputes the trial court's summary of the defendant's contacts with this state, which is as follows:

(1) Defendant has a regional sales representative whose territory includes Wisconsin.

(2) During January 1980 defendant employed a parttime salesperson to sell its products in Wisconsin. This parttime person was a resident of Wisconsin.

---

[1] The plaintiff does not respond to the defendant's assertion that the action was commenced in this state solely because the plaintiff's attorneys are located here.

(3) Defendant uses Wisconsin firms to distribute its products.

(4) Defendant advertises in national trade magazines.

(5) Defendant does direct mailings to Wisconsin firms.

(6) Defendant sends technical personnel to Wisconsin to assist customers trying new products.

(7) Defendant attended trade shows in Wisconsin and reimbursed its Wisconsin distributors for expenses incurred in attending such trade shows.

(8) Defendant derives 3 percent of its total nationwide sales from Wisconsin.

(9) Defendant is not licensed to do business in Wisconsin. It has no offices, warehouses, or manufacturing plants in Wisconsin. It owns no property, real or personal, in Wisconsin.

In addition, it is not disputed that in the year 1979, preceding the commencement of this action, the defendant's gross receipts from sales in Wisconsin were about $144,000.

The burden is on the plaintiff to establish jurisdiction under this state's long-arm statute, which is to be liberally construed in favor of jurisdiction. *Lincoln v. Seawright*, 104 Wis. 2d 4, 9, 310 N.W.2d 596, 599 (1981). The plaintiff relies on sec. 801.05(1)(d), Stats., which provides:

A court of this state . . . has jurisdiction over a person served in an action . . . under any of the following circumstances:

(1) **Local Presence or Status.** In any action *whether arising within or without this state,* against a defendant who when the action is commenced:

. . . .

(d) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise. [Emphasis supplied.]

The focus of sec. 801.05(1)(d), Stats., is solely upon the defendant's contacts with this state. It does not re-

quire that the plaintiff be a Wisconsin resident. It does not require a local cause of action. It does not differentiate on its face between actions brought by residents and nonresidents or between foreign and local causes of action.

The trial court's memorandum opinion implied that the defendant's contacts in Wisconsin might be sufficient to support jurisdiction under the statute if the plaintiff were a Wisconsin resident, or if the cause of action had arisen here. It determined, however, that in the absence of either "the level of contacts required to establish jurisdiction must be considerably higher" than otherwise. Under this higher standard, it concluded, the defendant's contacts were insufficient to constitute "substantial and not isolated activities" within the meaning of the statute.

The trial court's conclusion is one of law and is entitled to no special deference from a reviewing court. *Afram v. Balfour, Maclaine, Inc.*, 63 Wis. 2d 702, 708, 218 N.W.2d 288, 291 (1974). We nonetheless find its conclusion compelling.

The supreme court has repeatedly stated that the legislature's purpose in creating the various subsections of the long-arm statute was to codify the due process requirements of "minimum contacts" required under *International Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny before the courts of one state could legitimately exercise jurisdiction over the citizens of another. *Lincoln,* 104 Wis. 2d at 10, 310 N.W.2d at 599; *Stevens v. White Motor Corp.,* 77 Wis. 2d 64, 74, 252 N.W.2d 88, 93 (1977). It has been held that " 'the statute was intended to provide for the exercise of jurisdiction over nonresident defendants to the full extent consistent with the requisites of due process of law.' " *Zerbel v. H.L. Federman & Co.,* 48 Wis. 2d 54, 59–60, 179 N.W.2d 872, 875 (1970), *appeal dismissed,* 402 U.S. 902 (1971), quoting *Flambeau Plastics Corp. v. King Bee Mfg. Co.,* 24 Wis. 2d 459, 464, 129 N.W.2d 237, 240 (1964).

Because of this legislative intent, compliance with the statute is presumed to be compliance with the requisites of due process. *Lincoln,* 104 Wis. 2d at 10, 310 N.W.2d at 599; *Schmitz v. Hunter Machinery Co.,* 89 Wis. 2d 388, 401–03, 279 N.W.2d 172, 178–79 (1979). That presumption may be rebutted, however, " 'especially through use of a five item due process jurisdictional contact analysis adopted in *Zerbel.*' " *Lincoln,* 104 Wis. 2d at 10, 310 N.W. 2d at 599, quoting *Hasley v. Black, Sivalls & Bryson, Inc.,* 70 Wis. 2d 562, 577, 235 N.W.2d 446, 454 (1975). The *Zerbel* due process analysis emphasizes (1) the quantity of the defendant's contacts with the state; (2) their nature and quality; (3) the source of the cause of action; (4) the interest of Wisconsin in the action; and (5) convenience of the parties in trying the action in this state. *Zerbel,* 48 Wis. 2d at 65–66, 179 N.W.2d at 878–79.

The plaintiff correctly points out that the due process analysis is not to be employed in the ordinary case. Compliance with the statute makes at least a *prima facie* case of compliance with constitutional requirements. *Schmitz,* 89 Wis. 2d at 401–03, 279 N.W.2d at 178–79; *Schroeder v. Raich,* 89 Wis. 2d 588, 597, 278 N.W.2d 871, 875 (1979). Due process principles cannot be ignored, however, in construing a statute designed to fulfill them. Statutes must always be construed so as to reach constitutional and reasonable results. *Acquisition of Certain Lands by Benson,* 101 Wis. 2d 691, 697, 305 N.W.2d 184, 187 (Ct. App. 1981) ; *Wipperfurth v. U-Haul Co. of Western Wis., Inc.,* 98 Wis. 2d 516, 522, 297 N.W.2d 65, 68 (Ct. App. 1980), *aff'd,* 101 Wis. 2d 586, 304 N.W.2d 767 (1981).

While the statute must be read broadly, it must also be remembered that the specific items listed in sec. 801.05, Stats., represent a codification of the minimum contacts

required to comport with due process. If we interpret the provisions of sec. 801.05 too broadly, we risk losing the appropriate minimum contacts which are "built in" to the statute.

*Lincoln,* 104 Wis. 2d at 14, 310 N.W.2d at 601.

The focus of the due process requirements is on the fairness and substantial justice of requiring the defendant to appear and defend against litigation in the forum state. In order to justify a state's assumption of jurisdiction over a nonresident corporation, the corporation must have "such contacts . . . with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend *the particular suit which is brought there.*" [Emphasis supplied.] *International Shoe,* 326 U.S. at 317.

The question, then, is whether sec. 801.05 (1) (d), Stats., should be interpreted to require more substantial "doing business" contacts within this state when jurisdiction is invoked by a nonresident, whose cause of action has no connection with this state, than when it is invoked by a resident or by one whose cause of action arose in Wisconsin. We conclude that both the statutory and the due process analysis dictate an affirmative answer to that question.

In adopting the liberal interpretation rule with respect to a former version of the "doing business" statute, the supreme court noted the familiar rule that "great consideration should be given to the object sought to be accomplished by a statute." *Huck v. Chicago, St. P., M. & O. R. Co.,* 4 Wis. 2d 132, 137, 90 N.W.2d 154, 157 (1958). Although in *Huck* the impleaded foreign corporate defendant's activities in Wisconsin were limited to soliciting freight and passenger business, the court stated:

We have no hesitancy in holding that the *objective of the statute was to give citizens of Wisconsin* the right to make use of the courts of this state in instituting causes

of action against any foreign corporation, which actually is carrying on business activities within the state, subject only to such limitations as are imposed by the United States constitution. [Emphasis supplied.]

4 Wis. 2d at 137, 90 N.W.2d at 157–58. Serving the state's interest in providing a forum to its own citizens was thus identified as a central purpose of the long-arm statute.

In *Sun-X Glass Tinting of Mid-Wisconsin v. Sun-X Internat'l*, 227 F. Supp. 365 (W.D. Wis 1964), the federal district court relied heavily on *Huck* in concluding that Wisconsin's long-arm statute should be construed to confer jurisdiction over a foreign corporation on this state's courts with respect to the Wisconsin plaintiffs with whom it had negotiated contracts in Wisconsin, but to withhold that jurisdiction with respect to the claims of similarly situated nonresident plaintiffs. As to the latter, it said, the causes of action "are apparently unconnected with Wisconsin and unconnected with [defendant's] activities undertaken in Wisconsin." 227 F. Supp. at 372. The court held:

Viewing all of the facts at hand, this court holds that where a non-resident plaintiff sues a non-resident corporation for injuries allegedly caused and sustained outside of Wisconsin, and where the plaintiff and defendant in respect to each other have had no contacts with Wisconsin, jurisdiction to render an *in personam* judgment by a Wisconsin court is lacking.

227 F. Supp. at 373.

*Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745 (4th Cir. 1971), *cert. denied*, 404 U.S. 948 (1971), came to an identical result in consolidated federal diversity jurisdiction actions. The nonresident plaintiffs had allegedly been injured by pharmaceutical drugs manufactured by the nonresident defendant and purchased and consumed by the plaintiffs outside the forum state. Employing a strictly due process analysis, the court noted "the lack of

a 'rational nexus' between the forum state and the relevant facts surrounding the claims presented." [Citations omitted.] 444 F.2d at 748.

If "plaintiff's injury does not arise out of something done in the forum state, then other contacts between the corpration [sic] and the state must be *fairly extensive* before the burden of defending a suit there may be imposed upon it without offending 'traditional notions of fair play and substantial justice.'" F. James, Civil Procedure 640 (1965). [Emphasis in original; citations omitted.]

*Id.* The court held that the defendant's activities in the forum state were too minimal to justify an assumption of jurisdiction. *Accord, Grevas v. M/V Olympic Pegasus,* 557 F.2d 65, 68 (4th Cir.), *cert. denied,* 434 U.S. 969 (1977); *Seymour v. Parke, Davis & Company,* 423 F.2d 584 (1st Cir 1970).

The following language in *Lee v. Walworth Valve Company,* 482 F.2d 297, 300 (4th Cir. 1973), is particularly apt:

Unquestionably, when the plaintiff is a stranger to the forum, we would require more substantial contacts with the forum state by the defendant before proceeding to exercise *in personam* jurisdiction than we would in a case in which the plaintiff lives in the forum state and the cause of action arose out of the defendant's activity in that state, however minimal that might be.

The plaintiff relies on *Perkins v. Benguet Consol. Min. Co.,* 342 U.S. 437 (1952); *Blount v. Peerless Chemicals (P.R.) Inc.,* 316 F.2d 695 (2d Cir.), *cert. denied,* 375 U.S. 831 (1963), and *Rollins v. Proctor & Schwartz,* 478 F. Supp. 1137 (D. S.C. 1979), *rev'd on other grounds,* 634 F.2d 738 (4th Cir. 1980), as support for its contention that the defendant's contacts with Wisconsin are sufficient to provide this state with jurisdiction of its action. Both *Rollins* and *Perkins* are factually distinct, however, as they involved defendants with significantly greater connection to the forum state than the defendant here pos-

sesses. Moreover, the court in *Blount* observed that "the propriety of exercising jurisdiction is more obvious when the plaintiff is a resident." 316 F.2d at 697.

We conclude that the liberal construction of the doing business statute laid down in *Huck, supra,* with respect to a Wisconsin resident and a Wisconsin cause of action does not compel an identical view of the defendant's contacts with this state with respect to a nonresident plaintiff with a foreign cause of action. This state does not have the same interest in providing a forum for nonresidents whose injuries by nonresidents have no connection to this state as it does in protecting its residents from nonresidents doing business here, or in protecting both residents and nonresidents from activities having some connection with the state. The statute must be construed according to its purpose, and the term "substantial and not isolated activities" must be construed "in light of the requirements of due process." *Schroeder,* 89 Wis. 2d at 594, 278 N.W.2d at 874. This reading of the statute is supported by the United States Supreme Court's statement in *Rush v. Savchuk,* 444 U.S. 320, 327 (1980) :

In determining whether a particular exercise of state-court jurisdiction is consistent with due process, the inquiry must focus on "the relationship among the defendant, the forum, *and the litigation." Shaffer v. Heitner,* [433 U.S. 186, 204 (1977)]. [Emphasis supplied.]

For these reasons we affirm the trial court's holding that when a nonresident plaintiff commences an action involving a cause of action having no connection to Wisconsin against a nonresident defendant doing business in this state, the defendant's contacts in this state must be substantially higher in order to support jurisdiction under the "doing business" statute than if the plaintiff

were a resident or if the cause of action were connected to this state.[2]

We have no difficulty in also affirming the trial court's determination that the defendant's contacts in Wisconsin were insufficient, under such higher standard, to support jurisdiction in this action. Neither the plaintiff nor the dispute between the parties had any connection to this state. This state, in which the defendant conducts about 3 percent of its business, has hardly been adopted by it as one of its major centers of business. *Cf.* the contrary situation in *Rollins, supra.* This state has no discernible interest in the dispute between these parties. As against this plaintiff, and this cause of action, the defendant had no basis upon which to "reasonably anticipate being haled into court" in Wisconsin. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

The plaintiff's initial brief on appeal is seven and one-half pages long and cites four cases. Its reply brief is twelve pages long and cites twenty cases, to which the defendant did not have an opportunity to respond. We point out that Rule 809.19, Stats., contemplates that the appellant's brief will present all issues the appellant desires to present, together with supporting authority, that the respondent's brief will respond thereto and raise any new issues, and that the appellant's reply brief will be limited to the points raised by the respondent's brief.

*By the Court.*—Judgment affirmed.

---

[2] Favoring of a resident over a nonresident withstands constitutional scrutiny. *See Breeland v. Hide-A-Way Lake, Inc.,* 585 F.2d 716, 721 (5th Cir. 1978), *modified on other grounds,* 593 F.2d 22 (5th Cir. 1979).